UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | No. 3:15-mc-_____ |
| PILOT FLYING J LITIGATION II ) | |
| ) | Pending in the United States District |
| ) | Court for the Eastern District of |
| ) | Kentucky, No. 2:14-MD-2515 |

## MOTION OF PILOT TRAVEL CENTERS LLC TO QUASH SUBPOENA DUCES TECUM SERVED UPON KRAFTCPAs PLLC AND MEMORANDUM OF LAW IN SUPPORT

This is a motion to quash a subpoena duces tecum under Rule 45(d)(3)(A)(iii), Fed. R. Civ. P., which confers venue on this Court as "the court for the district where compliance is required . . . ." A copy of the subpoena in question (which reflects that this is the District "where compliance is required") is attached as Exhibit A to the accompanying Affidavit of Aubrey B. Harwell, Jr.

By way of overview, Movant contends that the subpoena calls for materials protected by its attorney-client privilege and the attorney work product doctrine. In addition, Movant contends that Tennessee's statutory accountant-client privilege, Tenn. Code Ann. § 62-1-116 (of which Movant is the holder), covers the materials that the subpoena calls for.

Movant, Pilot Travel Centers LLC d/b/a Pilot Flying J ("Pilot"), is a defendant in this Multi-District Litigation proceeding pending in the United States District Court for the Eastern District of Kentucky. The factual basis for this

motion is detailed in the accompanying Affidavit of Aubrey B. Harwell, Jr., and the Exhibits thereto. Most critical, however, is the April 29, 2013, engagement letter between Neal & Harwell, PLC, and KraftCPAs PLLC ("Kraft"), which Pilot is contemporaneously moving the Court to review *in camera*. Pilot recognizes that the Court may determine that the engagement letter itself is not privileged and order its production to opposing counsel, but believes it to be more prudent to seek *in camera* review of the engagement letter in the first instance to avoid any possibility of effecting a waiver.

The relevant facts demand a straightforward legal conclusion. Neal & Harwell, PLC, began representing Pilot on April 15, 2013, when FBI Agents and IRS Criminal Investigation Agents executed search warrants at various locations, including Pilot's headquarters in Knoxville. As was revealed by the prompt unsealing of the 120-page Search Warrant Affidavit on April 18, 2013, the government was investigating allegations of a relatively complex scheme to defraud perpetrated by multiple Pilot employees. More specifically, the Search Warrant Affidavit described a scheme to underpay agreed-upon diesel price discounts (a/k/a "rebates") to Pilot diesel fuel customers.

Recognizing the likely financial complexity of the matter, Neal & Harwell promptly engaged the accounting services of Kraft, a large regional accounting firm based in Nashville. This was initially reflected by an April 18, 2013, letter

2

from Kraft Chief Manager Vic Alexander, CPA, to the undersigned Aubrey Harwell included in the proposed *in camera* submission.[1] This was followed by an April 29, 2013, letter from Mr. Harwell to Mr. Alexander (which Mr. Alexander counter-signed), likewise included in the submission. (Because the April 29 letter both attaches and refers to an executed version of the April 18 letter, Movant will consistently refer to a single engagement letter.)

The engagement letter makes it unequivocally clear that Neal & Harwell engaged Kraft for the sole and exclusive purpose of assisting in its (Neal & Harwell's) legal representation of Pilot, as is quite common in white collar criminal defense matters concerning allegations of financial fraud. Kraft was hired as what is sometimes referred to as a "Kovel accountant."

The term "Kovel accountant" derives from the Second Circuit's eponymous decision in *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) (Friendly, J.). *See generally* 2 STEPHEN A. SALTZBURG, MICHAEL M. MARTIN, DANIEL J. CAPRA, FEDERAL RULES OF EVIDENCE MANUAL 501-25-26 (10th ed. 2011).

Kovel was an accountant (a former IRS agent, in fact) who had been hired by a New York law firm specializing in tax law, which was representing an individual client under investigation for income tax violations. 296 F.2d at 919. Kovel was subpoenaed before a grand jury and ultimately held in criminal

---

[1] All Exhibits cited are Exhibits to the Harwell Affidavit.

contempt for refusing to answer questions about his communications with the law firm's client. *Id.* at 920.

On appeal, Judge Friendly faulted both sides for their "extreme positions"; the government contended that an accountant's communications with a law firm's client could *never* be protected by the attorney-client privilege, while Kovel contended that his bare employment by the law firm ended the inquiry. *See id.* at 923.[2] Procedurally, this resulted in the panel remanding the case to the district court for the threshold determination of why the law firm's client was communicating with Kovel, i.e., whether the existence of the privilege could be established. *See id.* at 923-24.

Along the way, however, Judge Friendly made it abundantly clear that communications with a law firm's "professional agent[s]" could and often should be privileged. *Id.* at 921. Referring to accounting services in particular, Judge Friendly memorably observed that "[a]ccounting concepts are a foreign language to some lawyers in almost all cases, and to almost all lawyers in some cases." *Id.* at 922. This immediately followed his analogy of how a lawyer would necessarily require the services of a translator to communicate with a client who spoke only a foreign language, which communications would indisputably be privileged. *See id.*

---

[2] Evidently, Kovel had been a long-time employee of the law firm itself, and was not an outside accountant whom the law firm had engaged for the particular case. *See id.* at 919 (noting that Kovel had been employed by the law firm since 1943).

4

at 921-22. Quoting Wigmore, Judge Friendly stated in broad terms that "the privilege must include all the persons who act as the attorney's agents." *Id.* at 921.

The deficiency that prompted the remand in the *Kovel* case (despite the Second Circuit's broad language endorsing the concept of extending the privilege's protections to the "attorney's agents") was the law firm's failure to establish as a threshold matter that Kovel was, in fact, acting as its agent in the context of the particular case. In this case, by contrast, the contemporaneous engagement letter for which Pilot seeks the Court's *in camera* review leaves no doubt that Neal & Harwell hired Kraft to serve as its "professional agent" in the law firm's representation of Pilot. Consequently, because the subpoena in question calls for communications with Kraft and Kraft's work product (functionally equivalent to Neal & Harwell's attorney work product under the circumstances), the Court should quash the subpoena to Kraft in its entirety.

Pilot is also invoking the accountant-client privilege established by Tenn. Code Ann. § 62-1-116, of which it is the holder. *See Fed. Ins. Co. v. Arthur Andersen & Co.*, 816 S.W.2d 328 (Tenn. 1991). The statute provides in full as follows:

> **62-1-116. Confidential Information.** – (a) Licensees shall not divulge, nor shall they in any manner be required to divulge, any information that is communicated to them or obtained by them by the reason of the confidential nature of their employment. The information shall be deemed confidential; provided, however, that nothing in this subsection (a) shall be construed as prohibiting the

5

disclosure of information required to be disclosed by the standards of the public accounting profession in reporting on the examination of financial statements or as prohibiting disclosures in investigations or proceedings under this chapter, in ethical investigations conducted by private professional organizations or in the course of peer reviews, or to other persons active in the organization performing services for that client on a need to know basis or to persons in the entity who need this information for the sole purpose of assuring quality control. Disclosure of confidential information pursuant to this subsection (a) shall not constitute a waiver of the confidential nature of the information for any other purpose.

    (b)    Information derived as a result of such professional employment is deemed to be confidential, except that nothing in this chapter shall be construed as modifying, changing or affecting the criminal or bankruptcy laws of this state or of the United States.

"Licensees" comprise both CPA *firms* (such as Kraft) and individuals holding certificates, registrations, or licenses issued by the Tennessee Board of Accountancy. *See* Tenn. Code Ann. §§ 62-1-103 (definitions), 62-1-107, -108, -109.

By the plain terms of the statute (read *in pari materia* with the engagement letter), the subpoenaed material is "confidential" and shall not be "divulge[d]" by Kraft.

### Conclusion

For all of these reasons, the Court should quash in its entirely the subpoena duces tecum that the plaintiffs' law firm of Organ Cole LLP caused to be served on KraftCPAs PLLC on April 17, 2015, a copy of which is attached as Exhibit A to the accompanying Affidavit of Aubrey B. Harwell, Jr.

6

Respectfully submitted,

**NEAL & HARWELL, PLC**

By: *[signature]*
Aubrey B. Harwell, Jr., # 002559
James G. Thomas, # 007028

2000 One Nashville Place
150 Fourth Avenue, North
Nashville, TN 37219-2498
(615) 244-1713 – Telephone
(615) 726-0573 – Facsimile
aharwell@nealharwell.com
jthomas@nealharwell.com

*Counsel for Movant, Pilot Travel Centers LLC d/b/a Pilot Flying J*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served via electronic mail and Federal Express on the following counsel of record for Plaintiffs, this the 8th day of May, 2015:

>Carrie M. Lymanstall, Esq.
>ORGAN COLE LLP
>1330 Dublin Road
>Columbus, OH 43215
>cmlymanstall@organcole.com

*[signature]*